55 CCPA

**Application of Karel H. N. SCHULPEN.**

**Patent Appeal No. 7870.**

United States Court of Customs and Patent Appeals.

March 14, 1968.

Stevens, Davis, Miller & Mosher, Donald G. Welsh, John H. Lewis, Jr., Washington, D. C., for appellant.

---

Joseph Schimmel, Washington, D. C., (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, Justice CLARK,* and RICH, SMITH and KIRKPATRICK,** Judges.

KIRKPATRICK, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claims 15, 16 and 17, the only remaining claims, of appellant's application serial No. 623,210, filed November 19, 1956, entitled "Device for the Manufacture of Objects of Yieldably Deformable Material." The sole issue is whether the claimed invention is obvious, under 35 U.S.C. § 103, in view of a patent to Hendry.[1] We conclude that it is not.

The application relates to a machine for subdividing a block of foam rubber or like deformable and compressible material under controlled compression in such manner as to produce two substantially identical articles having contoured surfaces. Figures 1, 2 and 3 are as follows:

FIG. 1

FIG. 2

FIG. 3

Figures 1 and 2 show an embodiment wherein 1 and 2 designate endless conveyor belts carrying spaced projections 3 and 4, respectively, in staggered relationship. A block 5 of foam rubber or a similar material is carried in compressed condition between the belts and projections past a cutting knife at 6. The material thus is cut along a line which, when compression is relieved, results in the division of the block of material into two sections with the separation along a surface with the configuration represented by the sinuous line 7. Thus, two similar articles, such as mattress components, may be produced from a single block of foam rubber without any material being wasted.

Figure 3 represents a modification in which a block of compressible material is propelled by and compressed between rollers 8 and 9 to be cut by a knife at 12. The block is thereby severed in such manner that, when compression is relieved, the zone of separation is represented by the sinuous line shown to the left of the knife 12.

Claim 16 is representative:

16. A device for the simultaneous formation of at least two profiled objects of yieldably deformable material from a sheet of said material, each of said objects having a profiled surface, which surfaces are substantially similar to one another, said device comprising at least a pair of co-operating spaced compressing rollers for compressing the said sheet therebetween, said rollers being provided with projections and recesses between said projections, the projections and recesses

---

* Associate Justice, retired, Supreme Court of the United States, sitting by designation.

** Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. No. 2,214,461, granted September 10, 1940.

of both rollers having substantially the same shape, said rollers being turned over an angle relative to each other so that at the place which the sheet of material is compressed, the projections and recesses of one of said rollers are in staggered position relative to the projections and recesses of the other one of said rollers, a subdividing means being interposed between the co-operating compressing means and coinciding with a flat plane passing between said co-operating means for being moved relative to said block of material according to a straight line perpendicular to the direction in which the material is compressed by the said co-operating compressing means.

Claim 15 differs from claim 16 in reciting cooperating "compressing means" instead of being limited to rollers. Claim 17 is more restricted than claim 16 in additionally reciting projections and recesses arranged in rows lengthwise of the rollers and in staggered relationship in the rows.

The Hendry patent relates to devices for cutting tire patches from a strip of tire casing. Its most pertinent structures are illustrated in Figures 3 and 6 and Figures 5 and 8, respectively:

In Figure 3, an upper roller 5 having two axially-spaced, rounded radial projections 18 is disposed in cooperation with a lower roller 51 having two corresponding radial depressions 19. Tire fabric or other strip stock 12 is driven by the rollers and compressed therebetween to be severed, while in compressed condition, by a cutting knife disposed along the line designated "KNIFE," which line is level with the greatest radius of projections 18. Upon the stock passing out from the rollers and being relieved of compression, the lower part cut from the strip assumes the shape of the tire patch 20, shown in Figure 6. The upper part of the strip is of a different shape for which no use is set forth.

In the modified apparatus of Figure 5, the upper roller 5 is provided with a projection 25 in the outline of the cross-shaped patch 24 of Figure 8, which is to be produced thereby. A mating depression 27 of similar outline is provided in the lower roller 51. A cutting knife operates on the compressed strip along the line designated "KNIFE," which line is flush with the upper surface of the roller 51, to excise the tire patch 24 from the strip. The remaining portion of the strip has a different shape and no use is disclosed for it.

In applying Figure 3 of Hendry to the claims, the examiner stated:

* * * Fig. 3 discloses a pair of cooperating compressing means 5, 51 carried by shafts 4, 4. The compressing means 5 is provided with projections 18, 18 spaced by a recess. The cooperating compressing means 51 is provided with recesses 19, 19 spaced by a projection (the outer periphery of 51). The projections 18 coact with the recesses 19 and the recess, as defined above and located in 5, coacts with the projection located on 51. Thus, the several projections and recesses are in staggered relation, as recited in the claim. As the Examiner interprets the Hendry disclosure, there is one recess on 5 and one projection on 51. However, it is the Examiner's

contention that it would be obvious and within the skill of the art to mount additional units 5, 51 on the respective shafts if it were desired to provide plural projections and recesses as recited in the claim. * * *

■ While it might well be obvious to mount one or more additional rollers 5 and 51 on the shafts adjacent the single pair of rollers shown in Figure 3 to produce a plurality of the strips 20 of Figure 6, no reason is apparent for arranging for more than one pair of rollers to act on a single strip. In any event, the modification would not provide the structure recited in the claims or produce the result attained by that structure. Even regarding the plurality of rollers on each shaft as a unit, the projections and recesses on one compressing means or roller would not be of substantially the same shape or configuration as those on the other compressing means or roller that cooperates therewith, as required by the claims. Neither would the claim requirement that projections and recesses of the same shape on the two cooperating compressing means or rollers are in staggered relationship be met.

We cannot agree with the view, also expressed by the examiner, that the provision of recesses and projections of the same shape on the two rollers would be no more than a matter of design. It is that very difference from Hendry, in combination with the recited staggered relationship, that results in appellant being able to produce two useful articles of substantially the same shape from a single block while Hendry can produce only one useful article of the desired shape with the other portion of the material constituting waste.

Moreover, the board did not adopt the reasoning of the examiner discussed above, but stated instead:

While the patent [Hendry] is primarily directed to the manufacture of a single article and merely shows in Figure 6, for example, the article desired and produced by the adjustment shown in Figure 3, it is apparent that what appellant terms to be a scrap

has a profile which corresponds to the profile on the lower roll. Thus, the two structures produced have profiles that correspond to the profiles of the rollers, and the rollers in Figure 3 have projections and recesses. The recitals in the claims which describe the projections and recesses of both rollers as "having substantially the same shape" is [sic] broad in that they embrace profiles which follow a simple and well known sine curve in cross section, which profiles are no more than arbitrary and obvious variants of the profiles on the rollers shown in Figure 3 of the patent.

We are no more able to agree with the board's reasoning than we are with the reasoning of the examiner. While a sine curve is simple and well known, there is no suggestion whatever in Hendry that a profile of sine curve shape be employed for its tire patches or that its apparatus be modified to produce any other object with such a profile. Moreover, a sinuous or similar profile, such as results from the claim requirement that the projections and recesses on the rollers be of substantially the same shape and staggered, provides the novel and unexpected result that both portions of the severed block of material may be in the form of substantially the same useful article.

At oral argument, the solicitor advanced yet another variation in the theory of rejection, suggesting that one projection 18 and its cooperating recess 19 be interchanged between the rollers 5 and 51 in the Figure 3 arrangement of Hendry. Rather than being made obvious by the reference, such modification would run counter to its teaching by rendering the apparatus inoperative to produce the disclosed tire patches. It seems plain that the solicitor's suggestion must have originated with appellant's own disclosure and such disclosure, of course, cannot be used against him under 35 U.S.C. § 103. In re Sandiford, 358 F.2d 756, 53 CCPA 1087. Additionally, recitations in claims 16 and 17 relative to the rollers being turned at an angle relative to each other would not appear to be satisfied by the modification in question.

For the reasons stated, it is our opinion that the prior art of record fails to demonstrate that the claimed invention is obvious under the statute.

The decision is reversed.

Reversed.